## Meixell's Estate.

*Wills—Remainders—Vesting of—Act of June 29, 1923.*

1. A testator devised a certain property to his daughter Emma for such time as she, if she survived him, should remain unmarried, and directed that on her death or marriage it should be sold and the proceeds divided equally among his children, their heirs and assigns, to whom also he gave the residue of his estate. Emma survived the testator and subsequently died unmarried: *Held*, that the remainder vested at the death of the testator and not at the death of Emma, that Emma's welfare was the testator's chief concern, and, further, that he intended the net proceeds for all of his children as of the time of his death was shown by the residuary clause, where he used the same words as in the prior clause.

2. The rule of law is that children in existence at the death of a testator shall take when the bequest is to children as a class.

3. The Act of June 29, 1923, P. L. 914, as to the construction to be placed upon gifts over to testator's heirs or next of kin, persons entitled under the intestate laws, or other similar or equivalent phrase, is not retroactive.

Petition for order on register to issue letters of administration *c. t. a.* O. C. Lancaster Co., Nov. T., 1924, No. 22.

*S. V. Hosterman,* for petition; *J. R. Kinzer* and *Jacob Hill Byrne,* contra.

SMITH, P. J., Dec. 11, 1924.—This action comes up on petition and answer. The petition of Charles E. Bowman, administrator *c. t. a.* of the estate of Emma Meixell, deceased, who was a daughter of the testator, asks that the Register of Wills of Lancaster County be authorized to issue letters of administration *c. t. a.* in the estate of Isaiah Meixell, who died in 1890. The respondent, Andrew Meixell, a son of the testator, denies that the petitioner is a party, averring that Emma Meixell had only a life estate in the real estate which is the substance of the controversy, and that the title to the same is in him, and prays for the dismissal of the petition. The answer must be found in the will of Isaiah Meixell, the important parts of which are as follows:

"I give, devise and bequeath unto my daughter Emma, if she survive me and remains unmarried, and for such time as she shall remain single, all that certain two-story brick dwelling and lot or piece of ground thereto belonging, situated No. 444 on the West side of North Queen Street between Lemon and James Streets in Lancaster, Pa. (being the same property where I now reside), and all the household furniture contained in said dwelling house and on said premises at the time of my death. She to pay all the taxes & necessary repairs on said property while enjoying the same. In the event that my said daughter Emma should get married or die unmarried, then I direct said property to be sold at public sale by my executrix or her successor, and hereby empower my executrix or her successor to execute a lawful deed of conveyance to the purchaser for the same with the same effect that I might have done if living.

"The net proceeds of said property to be equally divided among my children, their respective heirs and assigns.

"All the rest of my estate is to be converted into cash by my executrix in such manner and time as she may deem advisable. For the real estate, if any, I hereby empower her to execute lawful deeds of conveyance to the purchaser or purchasers for the same with the same effect that I might have done if living.

"Should there be any liens or debts on said property heretofore described as No. 444, situated on North Queen St. and devised as aforesaid, at the time of my death I direct my executrix to pay and discharge the same out of the proceeds of the rest of my estate. The balance remaining I hereby give and bequeath in equal shares to my children, their respective heirs and assigns.

"I hereby appoint my daughter Emma to be the sole executrix of this my last will and testament."

Emma died, unmarried, Oct. 23, 1923. The question is, when did the remainder in No. 444 North Queen Street vest—at the death of the testator or at the termination of what proved to be a life estate in Emma?

The striking feature of the will is the evidence of the testator's preference for his daughter Emma. She is the first object of his bounty, also the executrix of his will. While he had four children, two sons and two daughters, she is the only one referred to by name.

It is conceded that the Act of June 29, 1923, P. L. 914, as to the vesting of a remainder at the termination of the life estate, cannot be applied, and, therefore, in harmony with many opinions of the Supreme Court, it is found that the legal presumption is that the remainder vested at the death of the testator. In as recent a case as Edelman's Estate, 276 Pa. 503, Mr. Chief Justice Moschzisker said: "It is a general canon of construction that words of survivorship in a will refer to the death of the testator [but, of course, that is subject to the] cardinal rule that the actual intent of the testator must prevail, where it can be ascertained, and it follows that words of survivorship will relate to the death of the life-tenant instead of the death of the testator, if such intent is clear from the will itself: . . . Morris's Estate, 270 Pa. 120."

In the event of Emma marrying or dying unmarried, the testator directed that the property be sold and the "net proceeds" therefrom be equally divided among his "children, their respective heirs and assigns." The rule of law is that children in existence at the death of the testator shall take when the bequest is to children as a class: Gross's Estate, 10 Pa. 360; Herr's Estate, 28 Pa. 467; Landwehr's Estate, 147 Pa. 121; Bradley's Estate, 166 Pa. 300, and Packer's Estate (No. 2), 246 Pa. 116.

In addition to the fact that Emma's welfare was the testator's chief concern, there is an inference to be drawn plausible enough to be of little less weight than a fact. It is that the testator had in his mind all of his children when he wrote his will; that he intended the net proceeds for all of them as of the time of his death, is strengthened by the clause disposing of the residue of his estate, where he uses the same words, "to my children, their respective heirs and assigns." The co-ordination is logical and convincing.

Counsel for respondent attempted to parallel the present case with Wood v. Schoen, 216 Pa. 425, where it was held that the remainder vested at the end of the life estate. Mr. Justice Mestrezat, who delivered the opinion of the court, said: "The will itself, unaided by any technical rules of construction, gives a definite and unequivocal answer to the question. Its language is: 'Upon the death of my said wife and all of my first named three sisters, I will . . . the other two-thirds . . . then to those who would then be entitled thereto under the intestate laws of this State.' The clause provides not only for the event which shall precede the passing of the estate, but also the time when the remaindermen are to be determined and the estate shall pass."

The only point of resemblance between these cases is that in both a time which followed an event fixed the objective intent. In that case it was as to the time of vesting; in this case it is as to the time for a sale. "The will itself, unaided by any technical rule of construction, gives a definite and unequivocal answer to the question." The property was to be sold when Emma's tenancy had been terminated by her marrying or dying unmarried. If she had married, the property was to be sold, just the same as if she had died unmarried. The testator discriminated in no way as to the two contin-

gencies—the happening of either fixed only the time for the sale of the property. It will be noticed that while the clause disposing of the "net proceeds" comes after the direction to sell, there is no connecting link between them. The former is a separate and distinct paragraph.

While the conventional estate in Emma was not given distinctly as a life estate, it proved to be one. In whom did the remainder vest? There is no trustee to conserve the interests. An abeyance is repugnant to the law, and a "freehold should never, if possible, be in abeyance." If the bequest of the "net proceeds" to testator's children is equivalent to a devise of the property, then in them, including Emma, vested the remainder. If the testator gave the legal seisin to no one, it vested in his heirs-at-law, of whom Emma was one: Lancaster v. Flowers, 198 Pa. 614. But it seems needless to speculate, for the testator concludes his will with: "The balance remaining I hereby give and bequeath in equal shares to my children, their respective heirs and assigns." This provision transmits everything which had not been specifically disposed of by the testator and vested the remainder in the children of the testator living at the time of his death.

We find neither law nor a testamentary intention for denying the petitioner's prayer; therefore, the Register of Wills of Lancaster County is hereby authorized to issue letters of administration c. t. a. in the estate of Isaiah Meixell, deceased.

From George Ross Eshleman, Lancaster, Pa.