## Williams v. New Cumberland Borough

*Dean A. Weidner,* for plaintiffs.
*Jon F. LaFaver,* for Borough of New Cumberland.
*Dwight-Jared Smith,* for Messiah College.
*Samuel L. Andes,* for intervenors.

### STATEMENT OF ISSUES AND FACTS

BAYLEY, *J.*, June 21, 1984—Plaintiffs, Leo Inns, Inc. and Harry and Amy Williams are, by virtue of agreements of sale, the equitable owners of three tracts of ground in New Cumberland Borough, all located on Drexel Hills Park Road. This road was laid out on a subdivision plan for Drexel Hills, Sec-

tion 6, approved for the Drexel Hills Land Company by the Borough of New Cumberland on January 3, 1963, and recorded on May 2, 1963. At the time this subdivision plan was approved, the Borough of New Cumberland did not have a subdivision ordinance. The Borough Code, however, required the borough to either have the improvements shown on the plan as necessary to service the development constructed, or alternatively, to secure a bond to guarantee that funds would be available for that purpose. No bond was required of the developer when this subdivision plan was approved.

The plan shows that the developer was to construct Drexel Hills Park Road as a 30 foot wide paved cartway with five foot wide concrete curbs on either side together with a storm sewer catch basin and run-off pipe. As shown on the plan this road, while ending in a cul-de-sac, is bounded by five numbered and three unnumbered lots. It provides access to a main road designated as Drexel Hills Boulevard.

The developer has since gone bankrupt and its principal has died. While plaintiffs' complaint in equity names Drexel Hills Land Company as a defendant, they were unable to obtain service of process against this company which has ceased to do business.

On July 26, 1963, the Drexel Hills Land Company deeded to the New Cumberland Borough Authority a tract of land near the end of the cul-de-sac to Drexel Hill Park Road. The authority used this land to construct a sanitary sewer pumping station. No re-subdivision plan was filed for this transfer. On November 26, 1980, the borough took title to this pumping station.

On June 28, 1979, the additional defendant, Messiah College, became the owner of three lots of

ground shown on the plan. In March of 1981, Messiah College was contacted by John D. Robins, the owner of one of the lots on the plan that adjoined the land of Messiah College. Mr. Robins requested that Messiah College convey to him a small portion of one of its lots so that he might erect a garage on this property. In response to this request, Messiah College prepared and filed a re-subdivision plan which divided its Lot 16 into two parcels: Lot No. 16A (which was later conveyed to John D. Robins by deed dated October 28, 1981) and a larger unnumbered lot (which is not owned by plaintiff Leo Inns). Messiah's final resubdivision plan was recorded on November 5, 1981. The borough did not require any bond or other surety for completion of any improvements depicted on this plan. Those improvements were the same as shown on the 1963 subdivision plan of the Drexel Hills Land Company with the sole exception being the division of Lot No. 16 into Lot 16A and the larger unnumbered lot. Plaintiff, Leo Inns, then purchased from Messiah this larger unnumbered lot together with two lots in which plaintiff Williams currently has an equitable ownership interest. Robins, after the purchase of his lot, obtained a building permit from the borough and constructed his garage. The borough did not require Messiah College or Robins to construct any of the improvements as shown on either the 1963 Drexel Hills Land Company Plan or Messiah's plan before issuing this permit.

Plaintiff Williams desires to build a home on his lot and has sought the issuance of a building permit from the Borough of New Cumberland. The borough has refused to issue the permit unless Williams bears the cost of constructing the streets, curbs, walks, sanitary sewer and storm sewer shown on the Drexel Hills Land Company's re-sub-

division plan recorded in 1963. All parties agree that the cost to make these improvements would be in the range of $40,000. Plaintiffs seek an order from this court:

(a) requiring the borough to accept dedication of the streets and easements shown on the 1963 plan to the extent they are not already dedicated;

(b) requiring the borough to construct the improvements shown on the 1963 plan (all parties agree that there are no assets in the developer's estate subject to execution);

(c) prohibiting the borough from denying a building permit to them on the basis of their failure to pay for the construction or to guarantee the construction of the improvements shown on the 1963 plan.

The Borough of New Cumberland contests plaintiffs' right to any relief and in the alternative maintains that Messiah College be found solely liable to plaintiffs or liable jointly with the Drexel Hills Land Company or liable over to the Borough of New Cumberland for any amount which the borough may be found liable to plaintiffs. Various owners of approximately 75 percent of the property abutting Drexel Hills Park Road, as depicted on the 1963 plan, have been allowed to intervene. They maintain that Drexel Hills Park Road is an unopened street which Section 1724 of the Borough Code now precludes from being opened absent the consent of 51 percent of all of the abutting owners. Such consent has not been forthcoming.

## I. DREXEL HILLS PARK ROAD HAS BEEN DEDICATED TO BUT NOT ACCEPTED BY THE BOROUGH OF NEW CUMBERLAND.

Plaintiffs maintain that Drexel Hills Park Road has been dedicated by the developer and accepted

by the borough as an open street. Accordingly, they claim that the borough has full responsibility for the completion of its construction and its future maintenance.

The recording of the subdivision plan in 1963, in which Drexel Hills Park Road was laid out by the developer, constituted an offer of dedication to the public. Burger v. Rockhill Builders, Inc., 278 Pa. Super. 430, 420 A.2d 615 (1980). The question now is whether the borough has accepted Drexel Hills Park Road in which case it would be an open street subject to borough maintenance and repair.

"Section 1724 of the Borough Code provides that if any street has been laid out and not opened to or used by the public for a period of 21 years, such street cannot thereafter be opened without the consent of at least 51 percent of the number of owners of the abutting real estate.[1] As noted in Boyer v. Baker, 196 Pa. Super. 405, 175 A.2d 143 (1961):

"If there has been no acceptance of a way dedicated in a recorded plan within 21 years, there may be no acceptance thereafter without the consent of the owners of the land on which the same has been laid out. Act of May 9, 1899, P.L. 173, No. 192, §1, 36 P.S. 1961."

Section 1701 of the Borough Code divided streets into two classes, "opened" and "unopened."[2] Opened streets include "all streets within the Borough used as public passageways," 53 P.S. §46701(2), while unopened streets include "all streets within the Borough not used, accepted or maintained, but placed on the Borough plan for fu-

_____

1. The Act of Feb. 1, 1966, P.L. (1965), 1783, No. 581 §1724, 53 P.S. §46731.

2. The Act of 1966, Feb. 1, P.L. (1965), 1780, No. 581 §1701, 53 P.S. §46701(1).

ture or prospective use, or placed on the plan of a real estate project, or referred to in individual deeds." 53 P.S. §46701(3). To accomplish a dedication of a street, thus making it as an open street, requires both an offer to and an acceptance by the borough. While acceptance of an offer of dedication is normally done by ordinance, it has been held that there may be an implied acceptance accomplished by public use. Capozzi v. Cummins, 191 Pa. Super. 500, 159 A.2d 536 (1960), or by the exercise of authority over the street by the municipality, Burger v. Rockhill Builders, Inc., supra.

On May 31, 1961, Leon and Mary Neefe purchased from the Drexel Hills Land Company an old run down stone home at the end of what is now the cul-de-sac of Drexel Hills Park Road. Their deed contained a right of way for ingress, egress and regress to Drexel Hills Boulevard. Mr. Neefe put that right of way, i.e., what later became designated as Drexel Hills Park Road on the 1963 plan, in condition to use it for this purpose. At his expense he put stone on the road every spring and retained a private contractor to plow the road during the winter. He put a sign up depicting it as a private road. When the Neefes sold their home 10 years later, they indicated to the people to whom it was sold that Drexel Hills Park Road, which provides the access to Drexel Hills Boulevard, was a private way.

Walter Diffenderfer has lived in a home on the corner lot of Drexel Hills Park Road since 1965. He used to assist Mr. Neefe in adding some stones and maintaining the road near his driveway. He has told people to get off the road on occasions. In the spring of 1966, Mr. Diffenderfer inquired from the Borough of New Cumberland if they would maintain the road. The borough's representative declined to participate.

This road serves only the people in the few homes on the lots bordering it. As such, the other people who use it are visitors to those homeowners. Occasionally some children or other people walk on the road to gain access to the wooded lands beyond. Linda Robertson who now lives in the former Neefe property confirmed that the road, which is roughly paved, is breaking up on the edges and is not maintained by the borough. After the Borough Sewer Authority constructed its pumping station in the early 1960's, the borough occasionally dragged the road to readjust the stones. It has also occasionally plowed the road so that borough trucks could gain access to the pumping station that was purchased from the authority in 1980. For the same reasons, the borough put some paving on the road during September or October of 1982, although it has not paved it to the width shown on the 1963 plan.

The road is not on the borough's plan for plowing streets. It has never provided street sweeping services, collected leaves or salted the road. It has never provided any trash service to the homes located on the road. It does not receive liquid fuel reimbursement funds from the Commonwealth for the road. The borough has always in the past accepted its streets by ordinance and it has never passed an ordinance accepting this road.

On facts quite similar to this case the Superior Court in Boyer v. Baker, 196 Pa. Super. 405, 175 A.2d 143 (1961), noted:

Milford Borough v. Burnett, 288 Pa. 434, 136 A.669 sets forth the rules for determining acceptance, inter alia (p.438), '. . . there must be unequivocal acts, continued during a long time, to show beyond question the intention on the part of the municipality to accept the proposed street as a public highway. The evidence to sustain this intent

must be clear and convincing: . . . Mere occasional use, or inconsequential acts for the convenience of the municipality will not be sufficient to convert a dedication into a public way:' Plaintiff's allegations fall short of the required merits. To say that he and other members of the traveling public have used Cairo Alley is far different than saying the general public made use of Cairo Alley as a public way for a long and continuous period; and to say that the township repaired and improved it from time to time falls short of alleging unequivocally that the township accepted it as part of the street system and assumed the responsibility of its repairs and maintenance. The act of the authority in laying a sewer along it is not the act of the municipality and has no significance. The right of the authority is not described or alleged to be the result of the dedication or its acceptance. The authority is not the municipality.

The court in Boyer found that there was a failure to show sufficient facts of acceptance by municipal action or by long public use of the way in question to constitute acceptance even though it had been dedicated on a plan. I find as a matter of fact and law that the Borough of New Cumberland has never accepted Drexel Hills Park Road or exercised such authority over it as to constitute an implied acceptance. Nor has an acceptance been accomplished by public use.

The reasoning in Boyer is persuasive. The fact that the borough did minor maintenance to the surface and put some paving on it, together with providing some occasional plowing consistent with its proprietary interest in the pumping station does not, in itself, constitute acceptance of the street where there clearly was no intent to accept it. Accordingly,

the borough is not responsible to construct, maintain or repair Drexel Hills Park Road.

At this point 21 years have passed since Drexel Hills Park Road was laid out on section 6 of the 1963 plan. Twenty-one years have also passed since the plan was recorded on May 2, 1963. Since we have found that this road was not previously accepted, and therefore opened, or subjected to being opened by the implied acceptance of the borough, the intervenors are correct that Section 1724 of the Borough Code now prevents the opening of this road under any circumstances without the consent of at least 51 percent of the abutting owners.

## II. THE BOROUGH OF NEW CUMBERLAND MAY NOT DENY THE PLAINTIFFS A BUILDING PERMIT ON THE BASIS THAT THE IMPROVEMENTS SHOWN ON THE 1963 PLAN HAVE NOT BEEN MADE.

Plaintiffs maintain that the failure of New Cumberland to obtain a performance bond at the time it approved the subdivision plan for section 6 on January 3, 1963, and the subsequent inability to force the developer to make the improvements shown on the plan, renders the borough responsible for paying for the installation of the improvements shown on the plan. For this position plaintiffs rely on Safford v. Board of Commissioners of Annville Twp., 35 Pa. Commw. 631, 387 A.2d 177 (1978).

In that case, Annville Township had failed to require the installation of streets shown on a developer's plan or to secure guarantees of completion. Plaintiff land-owners who had purchased from the developer sought an order directing the township to install the improvements. The Commonwealth Court noted:

". . . [B]y approving the original plan in 1963, the township commissioners enabled Meiley [the developer] lawfully to sell lots in his subdivision although the roads were not completed. They additionally committed buyers of such lots to believe that a township had in hand guarantees of the completion of public improvements shown on the plan. It seems to us that it must follow that a township whose commissioners by approving plans enable developers to record plans showing proposed public improvements and to sell lots, cannot be heard to tell purchasers of lots that public improvements, for which the township was required to obtain the developer's guarantees, will not in fact be so supplied because of the township's failure to comply with the law *and its own regulations.*" (Emphasis added).

Annville Township had enacted its own subdivision regulations requiring subdividers either to construct public improvements shown on their plans, including streets and storm sewers, or to provide the township with certified checks or surety bonds sufficient in amounts to assure the completion of all such improvements. The Commonwealth Court, reversing the Court of Common Pleas of Lebanon County, held that §3066(c) of the First Class Township Code, then effective, required the township either to see that the developer installed the road in accordance with the township's subdivision regulations or to obtain guarantees from the developer for the completion before approval. The court held that the township's failure to obtain such guarantees in the form of cash or a bond created a duty that made the township liable to bear the cost for the improvements, which then, if possible, could be recovered back from the developer.

However, it is apparent that the duty on the township to bear costs, created by Safford, rests upon the

failure of the township to comply with its own subdivision ordinance in effect at the time it approved the developer's plan. We agree with Judge Creany of Cambria County in Healey v. Borough of Westmont, 20 D.&C.2d 792 (1981), that a close reading of Safford discloses that any duty on the township to pay for improvements ". . . is entirely contingent upon the borough enacting a subdivision and land development ordinance." In Healey, the court dismissed a complaint in mandamus seeking to enforce a borough to complete and pay for improvements on a subdivision plan that had been approved for a developer but for which the borough had not required a bond as provided for by the legislature.

The record in this case discloses that at the time the Borough of New Cumberland approved the subdivision plan for section 6 of Drexel Hills on January 3, 1963, the borough did not have a subdivision ordinance. The applicable provisions of the Borough Code as it existed at the time provided as follows:

"Improvements or Guarantee thereof Prerequisite to approval of Plan. Before approving any subdivision plan, council shall require, either that the necessary grading, paving, and other street improvements, including, where specified by council, curbs, sidewalks, street lights, fire hydrants, water mains, sanitary sewers and storm sewers, shall have been installed in strict accordance with the standards and specifications of the borough, or that the borough be assured, in the form of a bond or deposit of funds or securities in escrow sufficient to cover the cost to the owner of the required improvements, as estimated by the borough engineer or any other person designated by council, that the said improvements will subsequently be installed by the owner of said subdivided lot, tract or parcel of land. Where the subdivision plan has been approved and record-

ed, either after the specified improvements have been completed and approved by council, or if prior to completion upon proper completion guarantee as aforesaid, *purchasers* and mortgagees *of lots in the subdivision, with or without buildings thereon* or on any of them, *shall be relieved of any and all liability for any deficiency in lack of or failure to complete the improvements above mentioned as set out in said plan,* or required as a condition precedent *to the approval of the plan of* subdivision, and any failure to complete or properly complete said improvements shall not encumber any or all of the lots in the subdivision. Act 9, 1951, July 19, P.L. 1026, No. 217 §7, Subsection (c) amended 1956, April 4, P.L. (1955) 1406, §1. (Emphasis added).

Although the Borough of New Cumberland failed to secure a bond as required by this section, it is not liable to bear the cost of improvements not made by the developer because there is no duty to bear costs imposed by this section even upon a violation of its provisions. The duty to bear costs found in Safford was premised upon the township's violation of its own subdivision regulations. The Safford court imposed this duty because of the ". . . feckless administration of its subdivision regulations . . ." as well as its disregard of the Township Code. Where no duty imposing costs on taxpayers is set forth by statute, we are reluctant to create such a duty by expanding the narrow holding under which Safford was decided. See McInernan v. Board of Supervisors of Ross Twp., 55 Pa. Commw. 240, 423 A.2d 1069 (1980). If the legislature had wished to create such a duty we must assume that it would have written a penalty provision into the statute.

Since Safford found a duty on the Township of Annville to bear the costs of improvements, it did not decide plaintiff's other contention that fairness

and equity estopped the township from imposing the costs on them. Id. at 638.

In the present case the Borough Code provision in existence at the time the 1963 subdivision was approved, relieved ". . . purchasers . . . of lots in the subdivision, with or without buildings thereon . . . of any and all liability from any deficiency in lack of or failure to complete the improvements . . . set out in said plan." Therefore, if the borough is unwilling to bear the expense of making the improvements and if they are unable to force the developer to bear the expense, they still cannot deny a building permit to plaintiffs on condition that the improvements shown on the plan have not been made. As in Safford, plaintiffs here purchased upon reliance of the representations in a recorded plan. Accordingly, the borough cannot force the cost of such improvements on plaintiffs as a condition precedent to issuing a building permit because these purchasers had a right to rely upon the borough to fulfill its responsibility to obtain a bond or other surety to complete the improvements on plan of Section 6 of Drexel Hills, which it approved. The violation of that responsibility by the borough, by statute and in equity, renders their hands unclean and estops them from now requiring these plaintiffs to make those improvements prior to being issued a building permit. Neither the borough code or any subsequent subdivision ordinance enacted by the borough changes these facts.

The borough cannot have it both ways — they cannot refuse to pay for the improvements but still require plaintiffs to pay for them when the borough itself violated the Borough Code in failing to insure that there was financial security to guarantee the improvements being made at the time they approved the plan. It is for this reason that we believe

the statute relieves all purchasers and mortgagees of lots in a recorded subdivision of any and all liability to complete improvements shown on the plan. If there is no such liability then the borough cannot impose the costs on these purchasers through the back door method of conditioning the issuance of a building permit on same.

Plaintiffs, who have purchased their property subject to a recorded subdivision plan, still have a private easement to use Drexel Hills Park Road, which is depicted in that subdivision, even though it has not been accepted by the borough. Cohen v. Simpson Real Estate Corporation, 385 Pa. 352, 175 A.2d 143 (1956); Boyer v. Baker, 196 Pa. Super. 405, 123 A.2d 715 (1961). Thus, like all other property owners abutting this road, plaintiffs will have access to Drexel Hills Boulevard.

Additionally, the borough maintains that plaintiffs may not justifiably rely on the plan of Section 6 because it was recorded more than 30 days after it was approved by council. It was approved by council on January 3, 1963, and recorded on May 2, 1963. They cite the Borough Code which provides:

Recording: The action of counsel or of the Court on appeal in approving any sub-division plan or an approved duplicate copy of such plan shall within 30 days after the date of approval, be recorded by the owner in the Office of the Recorder of Deeds of the County wherein such land is located.[3]

The borough cites Lancaster v. Flowers, 198 Pa. 614, 48 Atl. 896 (1901) for the proposition that if the recording of any document does not meet statutory

---

3. Act of July 19, 1951, P.L. 1026, No. 217, §7, 53 P.S. 46607(a), since repealed and re-enacted with a 90 day time period in the Act of 1968, July 31, P.L. 805, Art. V, §513, 53 P.S. 10513.

requirements, it is a nullity. The Lancaster case is distinguishable from this case. Lancaster was a partition action in which the court assessed which of two deeds conveying the same property should prevail. The earlier of the two deeds lacked an acknowledgment for one of the two grantors. Thus, the second deed prevailed. The court noted that the grantee of the subsequent deed has not had notice of the prior deed. The present case involves a subdivision plan which was eventually recorded. All parties have had actual notice of its existence. The borough approved the plan and subsequent conveyances have been recorded with express reference to that recorded plan.

The main purposes of recording is to provide notice. There is no basis for any party in this action to assert lack of notice of the information contained in the plan in issue. In particular the Borough of New Cumberland, which approved the plan, cannot assert lack of notice as a defense to the claim for relief in this case. Neither the statute or equity supports the borough's position that the plan became a nullity on February 3, 1963.

### III. MESSIAH COLLEGE IS NOT LIABLE FOR THE COST OF ANY IMPROVEMENTS SHOWN ON THE PLANS OF 1963 AND 1981.

The borough's complaint joining Messiah College as an additional defendant must be dismissed. We would first note that the borough correctly argues that Messiah College acted as a developer under Section 107(8) of the Pennsylvania Municipalities Planning Code when it presented its plan of 1981 to the borough for approval.[4] Under Section 509 of the

---

4. The Act of July 31, 1968, P.L. 805, Art. I, §107, 1972, June 1, P.L. 334, No. 93 §107, 53 P.S. §10107(8).

code a developer is responsible to either complete the improvements contained in its subdivision plan or post adequate security for the completion of these improvements before final approval of the plan by the municipality.[5] Although the borough required no bond be posted by Messiah College it now maintains that it is Messiah's responsibility to make the improvements on Drexel Hills Park Road before it is required to issue a building permit to Williams.

I find that the principles of equity dictate that Messiah College is not responsible to make the improvements shown on the plans. It is clear that when Messiah College prepared its plan of 1981, it included the improvements noted on the plan of 1963 only as points of reference. These improvements were not the subject of the plan of 1981. They were the subject of the plan of 1963 and were the responsibility of the developer of that plan to construct.

I find as a fact that when the borough approved the 1981 plan it did not require, contemplate or expect Messiah College to complete those improvements. Nor did Messiah College assume responsibility to complete same. The points of reference on the 1981 plan to the improvements shown on the 1963 plan were for the purpose of informing prospective buyers of the existence of those improvements, the construction of which was required of the original developer of the tract. Messiah and any subsequent buyers had a right to expect the original developer to construct these improvements or the borough to do so with the security it was required to obtain under the borough code at the time it approved the plan in 1963. Since the construction of

---

5. 53 P.S. § 10509.

the garage on the Robins property was a minor improvement it appears that the borough waived literal enforcement of its current subdivision ordinance when it issued Robins a building permit.

The Borough of New Cumberland is estopped from seeking contributions of any kind from Messiah College to pay for the improvements shown on either the 1963 or 1981 plan. The complaint against Messiah College joining it as an additional defendant is dismissed.

## DECREE NISI

And now, this June 21, 1984, it is ordered, adjudged and decreed:

(a) The Borough of New Cumberland is permanently enjoined from denying plaintiffs a building permit on the basis that the improvements shown on the recorded 1963 subdivision plan of the Drexel Hills Land Company and the 1981 subdivision plan of Messiah College have not been made;

(b) The Borough of New Cumberland is permanently enjoined from requiring as a condition to the issuance of a building permit to plaintiffs that such improvements as shown on the two aforesaid plans be made or guaranteed to be made by anyone prior to the issuance of said permit;

(c) All parties shall bear their own costs and counsel fees in this proceeding.

The prothonotary is directed to enter this decree nisi and send a copy of this opinion and order to the parties counsel by regular mail. If no objections are filed by any party to this order within ten days after the entry thereof, it shall be entered by the prothonotary as a final decree.